UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER LEE HODO,

                                Case. No. 18-10535

        Plaintiff,             District Judge Paul D. Borman
                                Magistrate Judge R. Steven Whalen

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Walter Lee Hodo ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #18] be DENIED and that Defendant's Motion for Summary Judgment [Dock. #21] be GRANTED.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on October 21, 2014, alleging disability as of August 1, 2005[1] (Tr. 164, 171). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on March 15, 2017 in Flint, Michigan before Administrative Law Judge ("ALJ") Andrew G. Sloss (Tr. 36). Plaintiff, represented by attorney Erica Riggs, testified (Tr. 39-51), as did Vocational Expert ("VE") Stephanie Lorey (Tr. 51-53). On July 3, 2017, ALJ Sloss found that Plaintiff was capable of performing his past relevant work as a small parts assembler (Tr. 15-26). On January 26, 2018, the Appeals Council declined to review the administrative decision (Tr. 1-3). Plaintiff filed suit in this Court on February 14, 2018.

## II. BACKGROUND FACTS

Plaintiff, born February 4, 1955, was 62 on the date of the administrative determination (Tr. 26, 164). His application states that he left school after seventh grade and worked as an assembler, manual laborer, and short-order cook (Tr. 207). He alleges disability as a result of back problems, leg pain, and a gunshot wound to the back (Tr. 206).

**A. Plaintiff's Testimony**

Plaintiff offered the following testimony:

He did not drive and had not worked since 2005 (Tr. 39). In 2004, he worked for a

---

[1]Plaintiff later amended the alleged onset of disability date to October 1, 2014 (Tr. 15).

temporary employment service doing assembly line work and machine operating (Tr. 40). The jobs did not require him to lift more than three pounds (Tr. 40). Due to nerve problems of the wrist, he was required to use two hands to lift even small items, resulting in the inability to fulfill the job requirements (Tr. 40).

Plaintiff's income was currently limited to $200 in state disability (Tr. 41). He was unable to work due to the diabetic complication of neuropathy of the feet (Tr. 41). He had experienced falls due to the foot problems and seizure-like activity (Tr. 41). He used a cane to avoid falls and made plans to attend physical therapy (Tr. 42). He coped with hand stiffness/cramping and the nerve problems of wrist by receiving "nerve shots" (Tr. 42).

In addition to the physical problems, Plaintiff treated with a psychiatrist for depression (Tr. 43). He had trouble completing paperwork, noting that while he was in prison, he failed two attempts to obtain a GED (Tr. 43). He was able to prepare simple meals (Tr. 43). He spent most of his days resting and playing with his grandchildren (Tr. 43). He took naps due to medication side effects and required the use of a "breathing machine" (Tr. 43). He experienced shortness of breath trying to tie his shoes (Tr. 43).

After being released from prison in August, 2014 but before he began living with his girlfriend, Plaintiff napped whenever he could (Tr. 44). His situation had improved since he moved in with his friend and he now napped twice a day for up to an hour (Tr. 45). He had undergone cataract surgery but required reading glasses for near vision (Tr. 45). He experienced eye itchiness and redness due to environmental allergies (Tr. 46). He had been

diagnosed with Hepatitis C but was unable to afford medication that would "cure" the disease (Tr. 46).  As a result of Hepatitis C, he experienced abdominal pain and swelling (Tr. 47). He had experienced lower back pain and lower extremity spasms since being shot as a young man (Tr. 47).

Plaintiff was able to sit for 30 minutes at a time and stand for up to an hour (Tr. 47). His doctor had advised him to "rest, elevate, and ice his feet" (Tr. 48).  He elevated his feet once a day for 30 minutes and iced his feet every two to three days (Tr. 49).  He had been advised not to lift more than 10 pounds (Tr. 49).  He admitted to past illicit drug use but had not used illegal substances for many years (Tr. 50).

### B. The Medical Records

#### 1. Records Related to Plaintiff's Treatment

August 28, 2014 psychological intake records note that Plaintiff had been released from prison the same day (Tr. 288-289).  Plaintiff reported depression but denied psychosis (Tr. 289).  Plaintiff was cooperative with normal speech and a normal ability to communicate (Tr. 290).  He was fully oriented with a logical thought process but impaired judgment (Tr. 291).  He denied current substance abuse (Tr. 293).  He was assigned a GAF of 55 due to depression and economic, occupational, and housing problems[2] (Tr. 294).  He did not meet the criteria for "intense mental health services" (Tr. 302).

---

[2] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* ("*DSM–IV–TR*"), 34.

September, 2014 treating records note a prescription for Elavil and directions to increase Plaintiff's Vitamin D intake (Tr. 330). In October, 2014, Plaintiff reported that he was sleeping at a mission but was able to prepare meals for himself without help, and said that he shopped for food and clothing once a month (Tr. 313). He reported that he was able to use public transportation (Tr. 315). He reported that he read only when required but watched television or listened to the radio every day (Tr. 315). He reported that he visited with his cousin whenever possible and spent their time together talking and playing cards or board games (Tr. 317). He denied difficulty keeping appointments (Tr. 319). An assessment by Joseph Ramzy, M.D. notes the conditions of hypertension, migraine, Hepatitis C, and chronic back pain (Tr. 343, 354, 405). Dr. Ramzy found that Plaintiff was limited to lifting/carrying less than 10 pounds on an occasional basis but did not have any limitation in manipulative activity (Tr. 343). Dr. Ramzy limited Plaintiff to standing/walking for two hours and sitting for six in an eight-hour workday (Tr. 343). The same month, Plaintiff reported pain on the top of his right foot (Tr. 346).

A January, 2015 colonoscopy showed no significant pathology (Tr. 466, 475). The same month, an eye exam showed 20/30 on the right and 30/20 on the left (Tr. 486). The same month, Plaintiff reported numbness and tingling of the right leg (Tr. 490). He appeared fully oriented and cooperative with a normal mood, affect, and concentration (Tr. 493). Plaintiff was advised to apply heat and/or ice to the lower back and start physical therapy (Tr. 495). A February, 2015 cardiac catherization was wholly normal (Tr. 498). The same

month, Plaintiff did not exhibit any physical or psychological problems or limitations (Tr. 498-499, 506), although he reported continued paranoia (Tr. 503-504). The following month, he reported chronic pain of the back, neck, head, and foot (Tr. 507).

Also in March, 2015, neurologist Nael M. Tarakji, M.D. noted a normal gait but clinical signs of bilateral CTS and "possible diabetic neuropathy" (Tr. 639). A physical examination from April, 2015 was unremarkable (Tr. 512-516). An EEG from the same month was normal (Tr. 642). An MRI of the lumbar spine showed no significant abnormalities (Tr. 645). An EMG of the lower extremities was normal (Tr. 644), and an EMG of the upper extremities showed bilateral mild CTS (Tr. 646). A brainstem auditory evoked response study was normal (Tr. 643). The same month, podiatrist Andrew Mechigian, D.P.M. noted Plaintiff's report of diabetic neuropathy (Tr. 783). An examination of the feet was wholly unremarkable except for an ingrown toenail and mild arthritic changes (Tr. 783).

May, 2015 imaging studies of the lumbar spine were unremarkable (Tr. 390). Plaintiff reported back pain (Tr. 519). The following month and in September, 2015, trigger point injections of the wrists were performed without complications (Tr. 647, 648). Plaintiff was advised to use hand braces (Tr. 648). In June, 2015 cataract extraction was performed without complications (Tr. 743, 767-770). August and September, 2015 records note that Plaintiff denied either current or chronic pain (Tr. 528, 532). October, 2015 treating records include diagnoses of CTS (diagnosis as of May, 2015), and diabetes (November, 2014) (Tr.

392).  Treating records note that Plaintiff appeared psychologically unremarkable (Tr. 545). A followup EMG of the lower extremities was normal (Tr. 650).

In January, 2016, Plaintiff was admitted for inpatient treatment after experiencing shortness of breath (Tr. 411-464).  Discharge records note "possible pneumonia" and severe constipation (Tr. 411).  The same month, treating records note that Plaintiff was discharged from a former pain management provider for seeking pain medication from multiple sources (Tr. 565).  He demonstrated normal mobility, neurological signs, and normal mood, affect, and concentration (Tr. 582).  The following month, Plaintiff reported leg and back pain (Tr. 593).  Trigger point injections to the wrists were administered without complications (Tr. 651).  In March, 2016, he requested a prescription for diabetic shoes (Tr. 609).  Treating notes from later the same month state that he had not picked up prescriptions written two weeks earlier (Tr. 615).  The following month, Plaintiff declined recommendations to undergo steroid injections to the back (Tr. 619).  In May, 2016, Plaintiff denied weakness or fatigue (Tr. 468).  He exhibited a normal gait, range of motion, and strength (Tr. 468).  Dr. Tarakji, noted "[N]o need for carpal tunnel surgery" (Tr. 652).  The following month Dr. Tarakji noted "no need for epidural steroid injection[s] or physical therapy" (Tr. 653).

In August, 2016, Plaintiff sought emergency treatment for a fall (Tr. 663).  He also reported anxiety but denied suicidal or homicidal ideation (Tr. 663).  The same month, Dr. Mechigian noted Plaintiff's report that his foot was "remarkably improved" following a June, 2016 bunionectomy of the right foot (Tr. 799, 803).  Plaintiff noted that he was required to

walk to the bus stop during the healing period (Tr. 803). He was advised to ice the foot (Tr. 803). He was advised to transition into normal footwear in the next few weeks (Tr. 803). Dr. Mechigian prescribed diabetic foot wear (Tr. 777). A November, 2016 x-ray of the left hand following a fall was unremarkable (Tr. 673, 731). Plaintiff reported good results from physical therapy despite recent falls (Tr. 694). CT and MRI studies of the cervical spine showed mild-to-moderate spondylotic changes without other abnormalities (Tr. 712, 720, 729, 732-733). CT and MRI studies of the head/brain were unremarkable (Tr. 716, 730, 735). An MRI of the lumbar spine showed only mild degenerative changes (Tr. 720). An EEG was normal (Tr. 736). December, 2016 records note "borderline" bilateral open angle glaucoma, deemed "low risk" (Tr. 745). Plaintiff reported light sensitivity (Tr. 755). The diabetes was deemed well controlled (Tr. 745).

## 2. Non-Treating Sources

In March, 2015, Carrie Gleason, Psy.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report that he had problems interacting with others and paranoia due to his time in prison (Tr. 367). Plaintiff also reported comprehension problems (Tr. 367). As to the physical problems, Plaintiff reported that right foot and knee pain made it difficult to run (Tr. 367). Dr. Gleason noted that Plaintiff was reading and performing mathematics at the seventh grade level (Tr. 367). Plaintiff reported that he split his time between his step-brother's home and his girlfriend's place (Tr. 368-369). He stated that he was socially appropriate with his relatives and friend so he would

have a "roof over [his] head" (Tr. 369). He reported that he was able to perform self-care tasks, do household chores, and shop independently (Tr. 369).

Dr. Gleason noted a normal gait and posture (Tr. 369). Plaintiff denied difficulty walking but stated that he was unable to walk "long distances" (Tr. 369). He was talkative and cooperative (Tr. 369). He reported a good relationship with his girlfriend but stated that he was worried about money (Tr. 370). Dr. Gleason found mild limitation in the ability to understand, attend to, and remember work-related instructions but that the ability to "interact with co-workers and supervision and to adapt to change and stress" were "moderately impaired" (Tr. 370-371).

The same month Scott R. Lazzara, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of chronic back pain due to a 1985 gunshot wound (Tr. 373). Plaintiff reported taking a Naprosyn and Arthrotec but did not use an assistive device (Tr. 373). He reported that he lived with his girlfriend (Tr. 373). He reported that he could do household chores and was able to drive (Tr. 373). He reported that he could walk around half a mile and lift 10 pounds (Tr. 373). He reported a ninth grade education (Tr. 373). He exhibited normal grip strength and a normal range of motion in all areas except for mild limitations in the lumbar spine (Tr. 374-375). He was able to stand on either foot (Tr. 374). He had normal reflexes and neurological abilities (Tr. 376-378). He exhibited 5/5 strength in the upper extremities (Tr. 379). Imaging studies of the right shoulder were unremarkable (Tr. 380).

Later in March, 2015, Rom Kriauciunas performed a non-examining review of the treating records and consultative psychological examination, finding that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 64, 77). He found that Plaintiff's ability to get along with coworkers, accept instructions, and maintain socially appropriate behavior was not significantly limited, but that Plaintiff was moderately limited in the ability to interact with the general public (Tr. 67, 80).

**C. Vocational Testimony**

VE Lorey classified Plaintiff's past relevant work as a small products assembler as exertionally light and unskilled[3] (Tr. 51). The ALJ asked the VE if a hypothetical individual of Plaintiff's age, education, and work experience would be able to perform exertionally medium work with avoidance of concentrated exposure to vibration and limited to "simple, routine tasks and work that has only occasional changes in the work setting and that involves only occasional interaction with the general public" (Tr. 51-52). The VE testified that the

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

individual could perform Plaintiff's past relevant work as a small products assembler (Tr. 52).

The VE testified further that if the same individual were limited to exertionally light work, he could perform Plaintiff's past relevant work (Tr. 52). The VE testified that the need to elevate the legs several times a day would eliminate the past relevant work and all other competitive employment (Tr. 52). The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") except for her testimony regarding the need to elevate the legs (Tr. 52).

In response to questioning by Plaintiff's counsel, the VE stated that the former job would require more than occasional interaction with coworkers and supervisors because it was a "tandem" position and if the hypothetical individual were limited to occasional or less than occasional interaction with coworkers and supervisors, the past relevant work would be unavailable (Tr. 53).

### D. The ALJ's Decision

Citing the medical records, ALJ Sloss found that Plaintiff experienced the severe impairments of "diabetic neuropathy; carpal tunnel syndrome; adjustment disorder with mixed anxiety and depressed mood; [and] opioid dependence" but that none of the conditions met or medically equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-18). The ALJ found that Plaintiff had only mild limitation in understanding, remembering, and applying information and moderate limitation in interacting

with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. 18-19). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for exertionally light work with the following additional limitations:

> He must avoid concentrated exposure to vibration. He can perform simple, routine tasks, in work that has only occasional changes in the work setting and that involves only occasional interaction with the general public (Tr. 19).

Citing the VE's testimony, the ALJ determined that Plaintiff was able to perform his past relevant work as a small products assembler (Tr. 25, 52).

The ALJ found that Plaintiff's alleged degree of limitation was only partially supported by the transcript (Tr. 24). He noted that while an EMG of the upper extremities was consistent with CTS, Plaintiff demonstrated normal grip strength and dexterity (Tr. 24). The ALJ noted that the physical examinations were generally unremarkable (Tr. 24). He noted that Plaintiff had not required recent psychiatric treatment and that none of the records showed psychosis or any other debilitating mental condition (Tr. 24). He discounted Dr. Gleason's finding of moderate impairment in the ability to respond to coworkers and supervisors to the extent that the finding could be construed to limit Plaintiff to occasional interaction with supervisors and coworkers (Tr. 24-25). The ALJ accorded "little weight" to Dr. Ramzy's finding that Plaintiff was limited to lifting 10 pounds, noting that the evidence of record showed "only mild objective findings" regarding the physical limitations (Tr. 25).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

In his sole argument for remand, Plaintiff argues that hypothetical restrictions posed to the VE which formed the basis of the ultimate RFC did not reflect his limitations stemming from the conditions of diabetic neuropathy, CTS, and psychological symptoms. *Plaintiff's Brief,* 7-12, *Docket #18,* Pg ID 864.

It is well settled that vocational testimony given in response to a question that does include all of a claimant's relevant limitations does not constitute substantial evidence. *Varley v. HHS*, 820 F.2d 777, 779 (6th Cir. 1987); *Teverbaugh v. Commissioner Social Security*, 258 F.Supp.2d 702, 706 (E.D. Mich. 2003) (Roberts, J)(reversible error for ALJ to rely upon

unsupported job findings in making a Step Five determination).[4]

As a threshold matter, the Step Two finding that the impairments of diabetic neuropathy, CTS, and anxiety and depression caused more than a minimal degree of work-related limitation does not imply that the conditions were disabling. "[T]his Circuit has made clear that the mere fact that a plaintiff suffers from certain conditions or carries certain diagnoses does not necessarily equate to disability or a particular RFC. Rather, a claimant must also prove its severity and functional impact." *Bruner v. Commissioner of Social Security*, 2016 WL 6080214, at *10 (E.D.Mich. February 18, 2016)(Davis, M.J.)(*citing Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988); 20 C.F.R. §§ 404.1520(c), 416.920(c).

As to the diabetic neuropathy, Plaintiff notes that he was advised by a treating source to elevate his legs several times a day. *Plaintiff's Brief* at 10. He cites the VE's testimony that the need to elevate the legs for two hours of an eight-hour workday would preclude all gainful employment. *Id.* (*citing* Tr. 52). However, by itself, Plaintiff's testimony that he did not elevate his feet for more than 30 minutes once a day (which presumably could be done

---

[4] The ALJ determined at Step Four of the sequential analysis that Plaintiff could perform his past relevant work (Tr. 25-26). He was not required to use VE testimony in making the Step Four determination. *Studaway v. HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987); *Mays v. Barnhart*, 78 Fed. Appx. 808, 813–814, 2003 WL 22430186, *4 (3rd Cir. October 27, 2003) ("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ"). Although the use of a VE is optional in making a Step Four finding, "the propriety of the hypothetical question ... is a proper concern for the Court, since it may furnish relevant information that the ALJ may consider in determining whether the plaintiff could do her past work." *Merkel v. Commissioner Social Security*, 2008 WL 2951276, *4 (E.D. Mich. July 29, 2008) (Lawson, J.)(citing 20 C.F.R. § 404.1560(b)). Accordingly here, the Court will address the adequacy of the limitations posed to the VE.

on his lunch break) defeats the claim that he was required to elevate his legs for longer periods (Tr. 49). The ALJ cited Dr. Lazzara's consultative findings that Plaintiff exhibited a normal gait, full muscle strength, and the ability to walk up to half a mile at a time without the need for a cane (Tr. 21, 373-374). He cited Dr. Lazzara's finding that Plaintiff could walk up to six hours a day (Tr. 22). Dr. Lazzara's findings that Plaintiff could perform the requirements of light work are also supported by Dr. Gleason's observation of a normal gait and posture (Tr. 369), numerous unremarkable imaging studies, and treating records noting a normal physical examination (Tr. 468, 498-499, 512-516, 528, 532).

Plaintiff's argument regarding CTS is based on the VE's testimony that a limitation to occasional handling and fingering would eliminate the past relevant work (Tr. 53). However, the ALJ provided a well supported rationale for declining to find that the condition of CTS would limit Plaintiff to occasional handling and fingering, noting that while clinical testing and an EMG confirmed the condition of CTS, Plaintiff exhibited full grip strength on examination (Tr. 24, 374-375), complained only intermittently of wrist/hand pain, and received only conservative treatment for the condition (Tr. 24). The ALJ also noted that the RFC precluded concentrated exposure to vibration (Tr. 19, 24). My own review of the transcript shows that the ALJ's findings are supported by Dr. Tarakji's findings of "[n]o need for carpal tunnel surgery" (Tr. 652).

Substantial evidence also supports the ALJ's findings that Plaintiff was not limited in his ability to interact with coworkers or supervisors. The ALJ addressed Dr. Gleason's finding of "moderate" impairment in the ability to interact with coworkers and supervisors (Tr. 24-25, 371), but noted that he did "not read [Dr. Gleason's finding] as requiring only occasional contact with co-workers/supervision" (Tr. 25). He noted that to the extent that Dr. Gleason's findings could be interpreted to require such a limitation, he accorded it "only partial weight due to . . . ambiguity" (Tr. 25). He accorded "significant weight" to Dr. Kriauciunas' non-examining findings which include the discrete finding that Plaintiff's ability to get along with coworkers, accept instructions, and maintain socially appropriate behavior was not significantly limited (Tr. 67, 80). My own review of the records show that Plaintiff repeatedly appeared fully oriented and cooperative with a normal mood, affect, and concentration (Tr. 369, 493, 582). None of the treating records note difficulty interacting with others. Because substantial evidence supports the ALJ's inclusion of some of the professed limitation and omission of others from the RFC, Plaintiff's argument that the ALJ erred by declining to accept all of the professed limitations does not provide grounds for remand. *See Stanley v. Secretary of HHS*, 39 F.3d 115, 118–119 (6th Cir. 1994)(ALJ not obliged to credit rejected allegations of limitation in question to VE or by extension, in the ultimate RFC).

In closing, my recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's legitimate physical limitations. However, the finding that he was capable of a limited range of unskilled, exertionally light work is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level. As such, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #18] be DENIED and that Defendant's Motion for Summary Judgment [Dock. #21] be GRANTED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 18, 2019

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 18, 2019, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen